**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| JOSE MURGUIA-AGUILAR,<br>Petitioner,<br>v.<br>TODD BLANCHE, *et al.*,<br>Respondents. | Case No. 2:26-cv-02260-RFB-DJA<br>**ORDER GRANTING WRIT OF HABEAS CORPUS** |

Before the Court is Petitioner Jose Murguia-Aguilar's First Amended Petition for a Writ of Habeas Corpus (ECF No. 8). Through it, Petitioner challenges the lawfulness of his ongoing detention at Nevada Southern Detention Center in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Petitioner argues that his ongoing detention is unlawful under (i.) Jacobo-Ramirez v. Mullin, --- F. Supp. 3d ---, 2026 WL 879799 (D. Nev. Mar. 30, 2026); (ii.) the Immigration and Nationality Act ("INA"); and (iii.) the Due Process Clause of the Fifth Amendment. Petitioner and Federal Respondents contest whether Petitioner is a member of the Jacobo-Ramirez Class. See Pet'r's First. Am. Pet., ECF No. 8 at 6–7 (August 6, 2026) [hereinafter, "Pet."]; Fed. Resp'ts' Supp. Notice Regarding Class, ECF No. 11 at 2 (August 14, 2026) [hereinafter, "Opp'n"].[1] However, because Petitioner was unlawfully arrested and detained under 8 U.S.C. § 1226(b)(2)(A), the Court need not reach Petitioner's class claims to find that Petitioner's statutory and constitutional rights were violated.

Thus, for the following reasons, the Court grants the Petition, awards Petitioner a writ of

[1] The Court notes that Federal Respondents initially conceded Petitioner's class membership, but changed their position without explanation for the change. Compare Fed. Resp'ts' Notice Regarding Class Membership, ECF No. 7 at 1 (July 29, 2026) with Opp'n.

habeas corpus, and orders Respondents to immediately release him from ICE custody.

## I. DETENTION UNDER 8 U.S.C. § 1226(b)(2)(A)

The Court finds that Petitioner Murguia-Aguilar was unlawfully detained under Respondents' erroneous interpretation of 8 U.S.C. § 1226(b)(2)(A).

By way of background, in July of 2025, Respondents began detaining noncitizens under 8 U.S.C. § 1226(b)(2)(A)—which authorizes detention of noncitizens who are applicants for admission—even though many of those noncitizens were categorically ineligible to be detained under that provision. Respondents' expanded mandatory detention policy was captured in: (i.) an internal ICE memorandum issued on July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" ("July 8th Memo"), and (ii.) the Board of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) [hereinafter, "Hurtado"]. See Jacobo-Ramirez v. Mullin, --- F. Supp. 3d ---, 2026 WL 879799, at *8–9 (D. Nev. Mar. 30, 2026) (discussing the July 8th Memo, which set forth the "formal nationwide policy of [the Department of Homeland Security ("DHS") and the Department of Justice ("DOJ")]," and Hurtado, in which the Executive Office for Immigration Review ("EOIR")—*i.e.*, the immigration "courts"—formally adopted this policy). The Ninth Circuit, along with many of our sister circuits, has held that Respondents' interpretation of 8 U.S.C. § 1226(b)(2)(A) is incorrect, and that 8 U.S.C. § 1226(b)(2)(A) cannot be used to detain noncitizens that are present in the interior of the country. See Rodriguez Vazquez v. Bostock, --- F. 4th ---, 2026 WL 2196424, at *26 (9th Cir. July 30, 2026); see also Barbosa da Cunha v. Freden, 175 F.4th 61, 71 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026); Rojas v. Olson, --- F.4th ---, 2026 WL 2198315 (7th Cir. July 30, 2026); Santillan Quiroz v. Mullin, 180 F.4th 1226, 1236-37 (10th Cir. 2026); Hernandez Alvarez v. Warden, 175 F.4th 1258, 1262 (11th Cir. 2026).

The record demonstrates that Respondents initially detained Petitioner Murguia-Aguilar unlawfully under 8 U.S.C. § 1226(b)(2)(A), not 8 U.S.C. § 1226(c). The Court makes this finding based on the Parties' allegations and the evidence they supply. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

Primarily, in Mr. Murguia-Aguilar's Form I-213, DHS alleges the bases for his ICE

charges to be INA § 212(a)(6)(A)(i) and INA § 212(a)(7)(A)(i)(I), in that Mr. Murguia-Aguilar was "present in the United States without being admitted or paroled, or . . . arrived in the United States at any time or place other than as designated by the Attorney General." Form I-213, ECF No. 7-1 at 5. That Form I-213 is dated June 28, 2026, the date of Mr. Murguia-Aguilar's arrest and detention by ICE. See id.; Pet. at 3. Federal Respondents now allege that 8 U.S.C. § 1226(c) governs Mr. Murguia-Aguilar's detention, and that he is removable under 8 U.S.C. § 1227(a)(2)(B). See Opp'n at 2.[2] Were this true at the outset of Mr. Murguia-Aguilar's detention, DHS would have alleged so on his Form I-213—*i.e.*, stating the basis for ICE charges as INA § 237(a)(2)(B) and/or INA § 212(a)(2)(A)(i)(II).

The Notice to Appear served to Mr. Murguia-Aguilar supports this conclusion as well. The Notice to Appear provides notice to a noncitizen of:

> (A)The nature of the proceedings against the [noncitizen].
> (B)The legal authority under which the proceedings are conducted.
> (C)The acts or conduct alleged to be in violation of law.
> (D)The charges against the [noncitizen] and the statutory provisions alleged to have been violated.

8 U.S.C. § 1229(a)(1). Mr. Murguia-Aguilar's Notice to Appear—dated June 28, 2026, the date of his arrest and detention—also states the basis for his removability as INA § 212(a)(6)(A)(i) and INA § 212(a)(7)(A)(i)(I). See Notice to Appear, ECF No. 7-1 at 7. DHS has checked the box charging Mr. Murguia-Aguilar as a noncitizen "present in the United States who has not been admitted or paroled" and alleged that he is not in possession of any valid immigration documentation. See id. Again, if Mr. Murguia-Aguilar were arrested and detained under the mandatory detention provision in 8 U.S.C. § 1226(c), the bases of his removability would have been listed as INA § 237(a)(2)(B) and/or INA § 212(a)(2)(A)(i)(II), and DHS would have alleged that Mr. Murguia-Aguilar was convicted of an offense that rendered him removable.

Further, in their sworn answers to the Court's interrogatories, Federal Respondents affirmed that, in arresting Mr. Murguia-Aguilar, they acted "pursuant to ICE Interim Guidance regarding Detention Authority for Applicants for Admission issued by Fomer [sic] Acting Director

[2] Notably, Respondents' filing was delayed past the date the Court set for a return, see Order to Show Cause, ECF No. 10 (August 10, 2026), and Respondents provide absolutely no explanation for their delay. See Pet'r's Reply in Support of First Am. Pet., ECF No. 12 at 1–4 (August 17, 2026); see generally Opp'n.

Todd M. Lyons, dated July 8, 2025." See Fed. Resp'ts' Answers to Interrogatories, ECF No. 7-2 at 3 (July 29, 2026); see also Fed. Resp'ts' Notice Regarding Class Membership, ECF No. 7 at 2 (fully incorporating Respondents' "prior litigated positions regarding 8 U.S.C. § 1225(b)(2)(A)"). As explained above, this now-vacated guidance improperly instructed Federal Respondents to arrest and detain all noncitizens—entering and present within the country—pursuant to 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention provision. See Jacobo-Ramirez, 2026 WL 879799, at *33.

Finally, Respondents' conclusory assertion that Mr. Murguia-Aguilar is subject to detention under 8 U.S.C. § 1226(c) comes after they initially conceded his membership in the Jacobo-Ramirez Class. Compare Fed. Resp'ts' Notice Regarding Class Membership, ECF No. 7 at 1 (July 29, 2026) with Opp'n. Respondents' failure to offer any explanation for this change in position[3], combined with the belated nature of the filing, contributes to the Court's finding that Respondents' invocation of 8 U.S.C. § 1226(c) is merely a convenient litigating position. See Dep't of Homeland Sec. v. Regents of the Univ. of California, 591 U.S. 1, 23–24 (2020). The Court declines to permit Federal Respondents' *post hoc* rationalizations that would force Petitioner and this Court to "chase a moving target." Id. at 23. Rather, Federal Respondents "must defend its actions based on the reasons it gave when it acted." Id. Cf. also Nat'l TPS All. v. Noem, 166 F.4th 739, 781 (9th Cir. 2026) (Mendoza, J., concurring) (rejecting "judicial blindness in the face of clear pretext"); Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)) ("Judges are not like pigs, hunting for truffles[.]")). Thus, the Court finds that ICE unlawfully arrested and detained Mr. Murguia-Aguilar pursuant to 8 U.S.C. § 1225(b)(2)(A) in violation of the INA.[4]

---

[3] Federal Respondents also fail to address why their initial concession should not be considered waiver of any objection to the Amended Petition. See Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816, at *4 (D. Nev. May 9, 2026) (noting that the government waived any argument that § 1226(c) applies to Petitioner because, "[a]t the time they filed the Return, Federal Respondents were aware of Petitioner's criminal conviction as detailed in the Petition, and in the documents attached to their Return. The time to argue that Petitioner's criminal conviction rendered him subject to detention under § 1226(c) was in their response to this Court's Order that they show cause 'why Petitioner is not a Class Member' and 'certify[ ] the true cause of his detention.'") (citations omitted).

[4] Because the Court finds it clear from the record that ICE arrested and detained Mr. Murguia-Aguilar under 8 U.S.C. § 1225(b)(2)(A), it declines to entertain Respondents' arguments that Mr. Murguia-Aguilar is properly detained under 8 U.S.C. § 1226(c). In any case, the Court notes that Respondents have failed to produce any records or provide any analysis whatsoever of Petitioner's alleged underlying convictions, and have thus failed to meet their burden. See Coronado v. Holder, 759 F.3d 977, 985 (9th Cir. 2014) (explaining that the government may meet their burden to

## II. DUE PROCESS

In addition, the Court finds that Petitioner Murguia-Aguilar's procedural due process rights have been violated. See U.S. CONST. am. V.

As a threshold matter, noncitizens are entitled to due process under the U.S. Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1158–60 (D. Nev. 2025). The Due Process Clause of the Fifth Amendment protects "every one" of the "millions of [noncitizens] within the jurisdiction of the United States" "from deprivation of life, liberty, or property without due process of law. . . . Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." Mathews v. Diaz, 426 U.S. 67, 77 (1976) (citations omitted); see also Shaughnessy v. U.S. *ex rel.* Mezei, 345 U.S. 206, 212 (1953) (The Due Process Clause guarantees that noncitizens "who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (emphasis added), superseded by statute on other grounds as stated in Dep't of Homeland Sec. v. Thuraissigiam, 345 U.S. 206 (2020); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted) (Noncitizens who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent."). Hence, the Supreme Court has consistently—and repeatedly—held that the Executive Branch cannot "disregard the fundamental principles" of "due process" while interacting with noncitizens who have "entered the country, and [ ] become . . . a part of its population," even those who are allegedly undocumented. See, e.g., Yamataya v. Fisher, 189 U.S. 86, 101 (1903); see also U.S. v. Raya-Vaca, 771 F.3d 1195, 1203 (9th Cir. 2014) ("This long line of precedent admits no exception: [a noncitizen] who has entered the United States is guaranteed due process protections.").

Physical freedom "lies at the heart" of the Due Process Clause—*i.e.*, an individual cannot be deprived of their physical freedom without due process of law. See Zadvydas, 553 U.S. at 690

---

show a noncitizen is removable under 8 U.S.C. § 1182(a)(2)(A)(i)(II) through "charging document[s], the terms of a plea agreement, the transcript of colloquy between the judge and the defendant in which the factual basis for the plea was confirmed by the defendant, and comparable judicial records"). Respondents must do more than simply cite to a statutory provision without explanation or analysis to meet their burden. The Court cannot and will not make Respondents' arguments for them. And the Court and Petitioner cannot speculate as to Respondents' arguments then respond to speculation as to Respondents' possible arguments.

(citation omitted). Furthermore, "notice and an opportunity to be heard" constitute the "fundamental features of due process[.]" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) (quoting Miranda v. Garland, 34 F.4th 338, 358 (4th Cir. 2022)). Thus, it follows that when the government subjects noncitizens to civil detention without supplying these basic, fundamental, procedural safeguards, their actions run afoul of the Due Process Clause.

For reasons articulated in this Court's order in Angeles-Pena v. Blanche et al., Case No. 2:26-cv-02154-RFB-EJY, 2026 WL 2280939 (D. Nev. Aug. 7, 2026), which the Court incorporates by reference as if fully set forth herein, Mr. Murguia-Aguilar's ongoing detention under 8 U.S.C. § 1225(b)(2)(A) violates due process. Specifically, as explained in Angeles-Pena, the Court finds Petitioner's detention without a bond hearing or notice of initial custody determination—*i.e.*, the procedures encompassed in 8 C.F.R. § 236—violates his rights to substantive and procedural due process. See Angeles-Pena, 2026 WL 2280939 at *3–9.

Even if Mr. Murguia-Aguilar were subject to detention under 8 U.S.C. § 1226(c), as Federal Respondents claim, he would still have been entitled to a Form I-286, notice of initial custody determination. See 8 C.F.R. § 236.1(g); Nielsen v. Preap, 586 U.S. 392, 409–10 (2019) (noting the Government's practice of "applying to the arrests of all criminal [noncitizens] certain procedural requirements . . . that appear only in subsection (a)"). Yet, Mr. Murguia did not receive a Form I-286. See Fed. Resp'ts' Answers to Interrogatories, ECF No. 7-2 at 3 (acknowledging that Petitioner was arrested pursuant to a lawfully executed and served warrant under 8 C.F.R. § 236.1(b) but was not given an initial custody determination pursuant to the July 8th Memo). Respondents' failure to provide Petitioner with a Form I-286—and the notice as to the relevant statutory basis for detention and opportunity to be heard it provides—violates due process.

Additionally, if Mr. Murguia-Aguilar were subject to detention under 8 U.S.C. § 1226(c), the failure of his Form I-213 and Notice to Appear to include the true bases and charges for his detention would also violate due process. See 8 U.S.C. § 1229(a)(1); Hirsch v. Immigr. & Naturalization Serv., 308 F.2d 562, 567 (9th Cir. 1962) ("[B]eing advised of the charges upon which [a removal] proceeding is based is fundamental to due process."); see also Trujillo-Chavez v. Warden of the California City Det. Facility, Case No. 1:26-CV-03216-DC-EFB (HC), 2026 WL

1724788, at *3 (E.D. Cal. June 15, 2026), report and recommendation adopted, 2026 WL 1893656 (E.D. Cal. July 1, 2026) (finding that the government "could not, consistent with due process, detain petitioner pursuant to 8 U.S.C. § 1182(a)(2), while only having given him notice that he was being charged as removable pursuant to sections 1182(a)(6)") (collecting cases). Thus, Mr. Murguia-Aguilar's continued detention without proper procedural protections violates due process for multiple reasons.

## III. REMEDY

Therefore, the Court finds Petitioner's detention has been unlawful under both the INA and the Due Process Clause from the moment it began, and immediate release—"the typical remedy" for "unlawful executive detention"—is appropriate here. See Munaf v. Geren, 553 U.S. 674, 693 (2008). Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward. Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to require that, in the event DHS seeks to re-detain Petitioner, Federal Respondents must provide him with the necessary regulatory procedures accompanying their statutory authority to do so. While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of the law and Petitioner's rights to date.[5]

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** Mr. Murguia-Aguilar's Petition for Writ of Habeas Corpus (ECF No. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must **RELEASE** Petitioner from detention on his personal recognizance on **August 22, 2026**, between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

---

[5] Immediate release is particularly appropriate given Respondents' lengthy history of non-compliance and defiance in similar cases. See Angeles-Pena, 2026 WL 2280939 at *10–13.

**IT IS FURTHER ORDERED** Respondents must return Petitioners' personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE**. If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** the Parties must file a **JOINT STATUS REPORT** by **August 24, 2026** confirming Respondents' compliance with this Order, including: (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** August 21, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**